IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0455 VRW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FERNANDO RENDON GUTIERREZ, | ) | DATE: July 10, 2008 |
| Defendant. | ) | TIME: 2:00 p.m. |

**DEFENDANT FERNANDO RENDON GUTIERREZ' MOTION FOR SUMMARY SENTENCING AND SENTENCING MEMORANDUM**

SCOTT A. SUGARMAN (No. 68277)
SUGARMAN & CANNON
44 Montgomery St., Suite 2080
San Francisco, CA. 94104
Telephone: (415) 362-6252
Facsimile: (415) 677-9445

Attorneys for Defendant
FERNANDO RENDON GUTIERREZ

# TABLE OF CONTENTS

I.     A SUMMARY SENTENCING PROCEDURE IS WARRANTED HERE..............2

II.    BACKGROUND OF FERNANDO RENDON GUTIERREZ.................................3

III.   THE CHARGED CRIME..............................................................................7

IV.    SENTENCING GUIDELINE CALCULATIONS....................................................8

V.     PRIOR CRIMINAL RECORD AND CRIMINAL HISTORY................................9

VI.    PLEA AGREEMENT........................................................................11

VII.   HIS PRIOR CONVICTIONS................................................................12

VIII.  FINDING THE APPROPRIATE SENTENCE.........................................16

SCOTT A. SUGARMAN (No. 68277)
SUGARMAN & CANNON
44 Montgomery St., Suite 2080
San Francisco, CA. 94104
Telephone: (415) 362-6252
Facsimile: (415) 677-9445

Attorneys for Defendant
    FERNANDO RENDON GUTIERREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0455 VRW |
| Plaintiff, | ) | |
| v. | ) | |
| FERNANDO RENDON GUTIERREZ, | ) | DATE: July 10, 2008 |
| Defendant. | ) | TIME: 2:00 p.m. |

**DEFENDANT FERNANDO RENDON GUTIERREZ' MOTION FOR SUMMARY SENTENCING AND SENTENCING MEMORANDUM**

Defendant Fernando Rendon Gutierrez requests that this Court sentence him forthwith, without securing the several-month delay to secure a full Presentence Report from the Probation Department.  The government and Mr. Rendon Gutierrez have submitted a plea agreement to this Court.  Mr. Rendon Gutierrez submits this Motion and Memorandum both to explain why that procedure is appropriate and to provide this Court with information both to support that request and to guide and support this Court's sentencing decisions in this case.

## I.  A SUMMARY SENTENCING PROCEDURE IS WARRANTED HERE

A referral of a defendant who has pled guilty to the Probation Department for the preparation of a Presentence Report (PSR) largely serves two purposes.  First, the PSR, along with the sentencing memoranda submitted by counsel, provide the Court with information to assist the Court in making necessary sentencing decisions.  Second, the PSR provides information important to establishing a plan after the defendant's release from custody while he/she is on supervised release or while on probation, as ordered by the Court.

Those justifications for the considerable delay and expense to prepare a PSR are largely inapplicable in this case.  This Court can confidently proceed in a more summary fashion.

First, Fernando Rendon Gutierrez is charged in this action with illegal re-entry after removal/deportation in violation of 8 U.S.C. § 1326.  The elements and nature of that crime are dramatically simpler and less varied than for a defendant charged with, for example, robbery or distribution of cocaine.  As the Plea Agreement between the parties made plain, this is the "vanilla" version of the crime – Mr. Rendon-Gutierrez was found in this country by law enforcement officers in October 2006, nothing more.  He admitted that "act" in the Plea Agreement and in open court.  No intensive investigation by the Probation Department is needed to apprise this Court of the nature of the crime or his role vis-à-vis other charged defendants.  There are no other charged defendants or uncharged individuals.

Second, the parties signed a Plea Agreement under Rule 11(c)(1)(C). While this Court has to decide whether to accept the terms of sentencing specified in that Agreement, the range and variety of sentencing choices that are commonly available to Court after a guilty verdict or a plea agreement under other subdivisions of Rule 11 are not presented here. Consequently, this Court has less "need" for the detailed information commonly found in a PSR.

Third, because Mr. Rendon Gutierrez is not a United States citizen, as he agreed in the course of the plea colloquy, he will be removed or deported from the United States immediately following his imprisonment. There will be no supervised release in this country as he is barred from being here. Thus, this Court need not determine conditions of supervised release, and similarly a probation officer will not need a PSR to devise appropriate conditions for that release.

In sum, a more summary procedure is sufficient for the status of this case to permit sentencing by this Court.

## II.    BACKGROUND OF FERNANDO RENDON GUTIERREZ

Fernando was born on July 17, 1971 in Guadalajara, Jalisco, Mexico to Victoria Gutierrez Limon (mother) and Juan Rendon Estrada (father). He was one of 13 children; he has 7 brothers (some now living in the United States [a letter from his brother Juan is attached]) and 5 sisters. His father was a farmer; his mother raised the children. While his mother is still alive, his father died in 2004. As Edna Watson noted in her letter [attached] Fernando is quite devoted to his mother.

He attended local schools in Mexico, but did not complete the 5th grade.

At an age when our children generally are just finishing middle school and still going off to summer camp, Fernando left his family and his home to come to this country to earn his livelihood. He was s boy, just 14, when he came to California in 1985. He stayed in the Santa Barbara area with his uncle and intermittently with a family friendly with his uncle. He attended school part-time while he worked in the Santa Barbara area. Letters attesting to his work in the mid to late 1980s are attached. His uncle moved to Northern California (Somes Bar) after he was in Santa Barbara for a year or two. He attended school part-time there also, but not for very long. He never finished elementary school or middle school.

Fernando had to work to help support himself. His ICE file confirms that he did exactly that – working in the fields, in the forests and in construction to make a few dollars for himself and his family in Mexico. He was so diligent that his local (Santa Barbara) employers, as demonstrated in the ICE records, sponsored him for a green card (Permanent Resident Status).[1] The government granted him a green card to work in 1990. Later, he worked in the fields and forests and on construction sites for employers up and down the state – indeed, up and down the West Coast – for 15 years until incarcerated in 1999, as further detailed below.

Counsel has attached some letters from people for whom he worked or knew him in this period (letters by Marie Harden, Robert Blanchard, David Gress and Rose Ogden, all

---

[1] It appears that he may have returned to Mexico after his initial entry in 1985, and later re-entered the United States through San Ysidro in the spring of 1988.

from Fernando's Immigration file). He was not here to deal drugs or perpetuate gang violence. He worked. And worked.

For example, Norman Coates, the owner of Coates Vineyards, Orleans, California, employed Fernando on-and-off for 10 years and described him in the attached letter as "an honorable person to me and others in this community."[2] In her letter, Edna Watson explained that she has known Fernando for at least 12 years and that Fernando worked hard for a number of families in her Northern California community. She was also aware that he would often send part of his earnings back to his family in Mexico.

Both his joy and sorrows began in the late 1990s. Fernando became intimate with a young woman, Roberta. She was 14 or 15 years old. Roberta's mother was aware of their relationship, as Roberta was living with her mother. Fernando lived nearby. Roberta's mother was comfortable with their relationship. Roberta became pregnant. While together, Roberta and Fernando discussed marriage.[3] Angelica, their child and Fernando's daughter, was born in December 1998 – she will be 10 this year.

Neither Roberta nor her mother complained to the police about their relationship or that she was pregnant with his child. However, while she was pregnant, in the early summer 1998, Roberta's father – who counsel has been told by Roberta's mother abandoned Roberta and had no role in raising or supporting Roberta – learned she was seeing Fernando, and complained to the police that Fernando raped her. Both Roberta and her mother were questioned and told the police that that was not true. Indeed, neither

---

[2] Mr. Coates also opined that "it would be a waste of a good person's life and our tax dollars to continue to keep Fernando incarcerated any further." His view is echoed in the attached letter from Edna Watson.
[3] Edna Watson reported in her letter that Roberta confided in her that she "fell in love" with Fernando.

wanted Fernando prosecuted at all, even for consensual sex.  Roberta told the police that

Fernando and she had sex only once and that she persuaded him to do so and he "really

didn't want to have sex" with her.  Roberta's mother later opined that Roberta's father

hated Mexicans and that was the reason for his report to the police.

Based on the father's complaint, Siskiyou authorities prosecuted Fernando for his

intimate relations with Roberta, as further detailed below.

Unlike some young men caught up in the criminal justice system, Fernando did not

abandon either Roberta or his daughter Angelica.  Since the birth of their child, Fernando

has provided both emotional and financial support for Roberta and Angelica.  His financial

support for mother and child is confirmed in letters by Fernando's brother (Juan) and Edna

Watson.

Counsel has attached to this Memorandum letters from both Roberta and Angelica

and notes and drawings that Angelica has made for her father and sent to him (mostly

while he has been in custody since the fall of 2006).  These notes speak both to their

continuing affection for Fernando, even as Roberta has moved on to another relationship

and will be married to another man (they also have a child together).  Counsel has also

attached pictures of Angelica that either her mother or grandmother sent to Fernando –

testimony both to their affection for him and his continuing relationship with his child,

however "removed" at this point.  He has continued to provide both financial support –

even while in jail now – and emotional support.[4]  Indeed, as he told the Court at the time of

---

[4] See attached May 20, 2008 letter (in Spanish with translation) from defendant's brother, Juan Gutierrez, who has been the intermediary on some occasions to provide money to Roberta/Angelica from Fernando.

Defendant's Motion for Summary Sentencing and Sentencing Memorandum

sentencing, he came back to America to see and support his daughter, and did support them through the same combination of hard-work jobs from his re-entry until his arrest in October 2006.

Fernando has received many cards and drawings from his daughter while he has been in custody. The fact that Roberta continues to contact Fernando, and that she allows their daughter to write to him, is testament to the fact that her birth was not just some quick liaison followed by abandonment. Roberta did not feel mistreated or abused by Fernando or she would not still be in contact and would bar contact between her daughter and Fernando. Further, in connection with his prosecution (discussed below), Roberta told the sentencing probation officer that she thought that Fernando would be a good father and husband.

## III.    THE CHARGED CRIME

On October 10, 2006, a Sonoma County Sheriff's Officer detained Fernando Rendon Gutierrez for speeding while he driving a car southbound on Highway 101 with several passengers, and thereafter arrested him. Officers determined that he was in this country illegally. He was still on parole. Being here illegally and his failure to advise his parole officer that he was in California prompted a California parole hold. He was ordered to serve 9 months in prison (completed July 7, 2007).

According to discovery provided in this case, government agents learned that Rendon Gutierrez was in custody in a California state prison not later than March 15,

2007.[5]  However, federal authorities did not remove him from California prison custody for federal prosecution for this crime until he had completed his parole sentence.[6]  He was charged with one count of illegal re-entry in violation of 8 U.S.C. § 1326.  He came into this Court's jurisdiction on or about July 7, 2007, and has been continuously in custody since that date on this Indictment alone.

## IV.    SENTENCING GUIDELINE CALCULATIONS

A violation of 8 U.S.C. § 1326 is addressed in USSG § 2L1.2.

The base offense level for that offense is Level 6.  However, the Offense Level increases geometrically based on whether the individual has a prior record.  Rendon Gutierrez has suffered two prior convictions for having sex with a minor, as further detailed below.  These acts are deemed a so-called "crime of violence" as peculiarly defined in the Guidelines, and his offense level is increased by 16 levels, 200 percent, to level 24.  USSG § 2L1.2(b)(1)(A).  See App. Note 1(B)(iii).  No violence is required to commit a so-called "crime of violence" under § 2L1.2, and neither of his convictions involved an element of violence.

_____

[5] A Department of Homeland Security agent interviewed him on March 15, 2007, and thus agents must have known of his presence prior to that date.  A detainer was lodged on March 16, 2007.

[6] In setting a sentence, a court may consider the government's failure to more promptly prosecute a defendant while that defendant is serving another sentence, such as a parole violation, and that the government's "timing" may have denied the defendant an opportunity to secure a concurrent sentence.  See United States v. Sanchez-Rodriguez, 161 F.3d 556, 564 (9th Cir. 1998) (en banc) ["The lost opportunity to serve more of one's state term concurrent with one's federal term is a factor unmentioned by the Guidelines. Departure based on an unmentioned factor is permissible if the factor takes the case out of the heartland of the Guidelines."]  If a court is able to depart downwardly, the additional discretion now granted a sentencing court under 18 U.S.C. § 3553(a) surely permits the court to consider this fact in selecting a sentence.

Rendon Gutierrez' offense level is reduced by three levels for acceptance of responsibility. As Rendon Gutierrez stated in open court at the time of his plea and in this Memorandum, he accepts responsibility for his crime of being in this country illegal.  He admitted that he knew he should not return without permission of the U.S. government and that he nevertheless did so.  He explained to this Court that he was the father of his daughter and came back to see her and to provide financial support to her and her mother.  As he advised counsel, "I came back to the U.S. to see and support my daughter.  I knew it was wrong to come back without papers.  I am sorry."

## V.    PRIOR CRIMINAL RECORD AND CRIMINAL HISTORY

At the time of Rendon Gutierrez' arrest by law enforcement in October 2006, he was in Criminal History Category IV as calculated under the Guidelines.[7] He has suffered the following convictions:

1.    In Siskiyou County (California), he was convicted in 1999 of a felony violation of California Penal Code § 261.5, unlawful sexual intercourse.  He was placed on probation for three years and ordered to serve 60 days in jail.  He was in jail at the time of sentencing and that sentence was deemed served.  At that time, Humboldt County had a hold on Rendon Gutierrez, and he was transferred to Humboldt County in custody.  Under USSG § 4A1.1(b), he receives 2 criminal history points for this conviction.

---

[7] Counsel for Rendon Gutierrez has previously discussed the calculation of criminal history with counsel for the government and believes the government is in agreement with information.

2.      After he was transferred to Humboldt County (California), he pled guilty to a similar offense of unlawful sexual intercourse, this time under California Penal Code § 288(c)(1).  The elements of this crime are that the defendant had consensual sexual relations with a minor who was 14 or 15 when he was at least 10 years older than the minor.  He admitted that crime in late 1999.  The trial court referred him for a psychological evaluation.  In the spring of 2000, the court sentenced Rendon Gutierrez to 3 years in prison.  (Following the completion of that prison sentence, he was removed from the United States.)  Under USSG § 4A1.1(a), he receives 3 criminal history points for this conviction.

3.      At the same time as the Humboldt County court sentenced Rendon Gutierrez on the above felony, he admitted and was sentenced for a misdemeanor violation of driving under the influence of alcohol (Vehicle Code § 23152), was given a concurrent sentence of credit for time served concurrent to the sentence for the felony conviction.  That offense in fact occurred in 1996 but was not adjudicated until 1999/2000 coincident with the violation of section 288(c)(1).  Under USSG § 4A1.1(c), he receives 2 criminal history points for this conviction.

4.      Although his period of parole from the Humboldt County prison commitment would normally have expired by the time of his 2006 arrest, because Rendon Gutierrez was removed from the United States, did not notify a parole officer of his illegal return and a parole warrant was issued, he was still under criminal justice supervision at the time of his arrest in October 2006.  Thus, under USSG s 4A1.1(d), he receives 2 additional points because he was on parole at the time of his current crime.

Hence, under the USSG, Rendon Gutierrez has 9 criminal history points, which is Criminal History Category IV.

With an Offense Level of 21 and a Criminal History Category IV, the USSG sentencing range is 57-71 months.

As detailed below, the above calculation of Rendon Gutierrez' Criminal History overstates his criminal record and history.

## VI.     PLEA AGREEMENT

Under the plea agreement, the government agrees to a sentence of 46 months in prison to be followed by three years of supervised release (even though with an Immigration hold it is demonstrable that Rendon Gutierrez will be removed from the United States immediately following the completion of this sentence).

Confinement for Rendon Gutierrez will be more onerous and of greater length than for another defendant having the same criminal history score and offense level, who is sentenced by a court to 46 months in prison. It is well accepted that because Rendon Gutierrez has an immigration hold that will lead to his immediate removal, the Bureau of Prisons (BOP) will NOT release Rendon-Gutierrez to a half-way house or home electronic monitoring or similar facility in the last 6 months or so of his sentence as BOP routinely does for other inmates convicted of a wide range of crimes. Similarly, because of that hold, BOP will confine Rendon Gutierrez in a more restrictive and unpleasant prison, particularly ironic as his current offense is a kind of status crime without individual victim or harm to another person.

## VII.    HIS PRIOR CONVICTIONS

Rendon Gutierrez' prior convictions disproportionately affect his sentence.  Thus, counsel offers some additional information and comments about them.

As noted above, Rendon Gutierrez has suffered two prior felony convictions, the first one in Siskiyou County and second one in neighboring Humboldt County.  Both involved consensual and intimate relations with young women under 16 years of age.

It is important to note both incidents preceded prosecution for either incident.  That is, Rendon Gutierrez was intimately involved with Roberta in Siskiyou County in the late winter/spring of 1998, and had a one-time incident with another young woman in November 1998.  However, he was not prosecuted for the Siskiyou County incident until the summer of 1999, and was then immediately prosecuted in Humboldt County for the second incident.  Hence, he did not commit one crime, for which he was prosecuted and then punished, and then get "commit" the second crime.

It is further important to note that neither of the young women promptly reported the incident to authorities.  Indeed, as detailed above, it was Roberta's father, who had not been at all involved in raising her, who lied to the police to allege that Fernando had sexually assaulted Roberta.  The officers did not contact her and her mother until nearly a year after the alleged sexual encounter, and both adamantly denied any forcible sex between them.  They did not want to prosecute Fernando at all; Roberta and Fernando had talked of marriage, not a jail cell.

The Sentencing Report prepared by the local probation officer concluded there were many mitigating factors and no aggravating factors.  The probation officer concluded the

victim was a willing participant and that the defendant believed the conduct was legal.

The report also noted that Fernando had no prior criminal record and he made an early

admission of responsibility.  The probation officer did not recommend any further

incarceration for him.

The Humboldt County matter was more complex.  Fernando and a friend (Alex)

arranged to meet with two 15-year old girls to party.  The girls lied to their mothers about

where they were going – they said they were going to a girlfriend's house for a sleep-over.

One girl brought condoms -- according to the second girl, the first usually carried condoms

-- and they met the two men in town.  They bought some alcohol, and because it was

raining, the men suggested they go to a motel.  The girls agreed.  Once there, all drank and

got drunk.  All of them also smoked marijuana.  Later that night, each man had sexual

relations once with one of the two young women.  The young woman with whom

Fernando had sex admitted to the police that she had been sexually active for some time

with different partners.

Months later, the girls told a girlfriend about the meeting and sex, who told a

teacher, who told...............and the police got involved.  While the girls alleged they had

sex while incapacitated due to alcohol, those charges were dropped.  Fernando admitted

one felony charge of having intercourse with a girl under 15 while he was 10 years old

than she was.[8]

---

[8] The state charging document alleged the young woman was under 15, when it appeared from the face of the charging document that she was over 15.  This was one of the "issues" that arose when considering whether to challenge the legality of these state prior convictions.

As required by law, the Humboldt County judge referred Rendon Gutierrez to a forensic, clinical psychologist for an evaluation. Based on testing and his review of the defendant, Dr. Vanoni concluded that Rendon Gutierrez was not a pedophile. Rather, Dr. Vanoni opined that his sexual conduct with the young woman in that case was due the defendant's cultural upbringing, in which sexual relations with young women of that age were not taboo and not uncommon,[9] his immaturity[10] and his misuse of alcohol. Dr. Vanoni opined that Fernando did not appreciate the significance of his ongoing misuse of alcohol at the time of the crime, though excessive drinking was evident in his admitted behavior and arrests for drunk driving.

Rather than prison, Dr. Vanoni recommended several years of probation, with counseling both for alcohol use and sexual behavior. However, the probation officer recommended three years in prison. That recommendation was plainly rooted in at least two misunderstandings: he believed the young woman involved was 14 (she was not, as noted below), and relied on mistaken assumption evident in Dr. Vanoni's report that Fernando had been prosecuted and punished for the Siskiyou County crime, and then re-offended, when that was plainly not the case.

As counsel made known to government counsel, there were reasons to question the legality of the finding of guilt in each case.

---

[9] That conclusion is reinforced by the fact that in Puerto Rico, an American "protectorate," the age of consent was 14 until 2006, when the age of consent was changed to 16 years of age. Compare repeated 33 L.P.R.A. § 4061 to 33 L.P.R.A § 4470.

[10] After testing, Dr. Vanoni concluded that Rendon Gutierrez was in the "dull-normal" range of intellectual functioning.

With regard to the Siskiyou County conviction, the court records make clear that the court never provided Rendon Gutierrez with a Spanish interpreter. He did not have an interpreter when advised of the charges, when he waived his constitutional rights and when he entered a guilty plea and was later sentenced.

That omission is particularly glaring when the records of his prosecution in Humboldt County, which immediately followed his prosecution in Siskiyou County shows that the court provided him a Spanish interpreter at all stages of the proceedings, including entry of plea and sentencing. Indeed, in that case, he was represented by counsel, who told undersigned counsel that he speaks fluent Spanish, yet the court still provided him a Spanish interpreter throughout.[11]

The prosecution in Siskiyou County was his first significant contact with the criminal justice system. Whatever English he acquired working in the forests of vineyards, or having a beer with friends, it is very unlikely that this uneducated man would readily understand concepts of confrontation and cross-examination, proof beyond a reasonable doubt, and similar principles essential to a full understanding and waiver of rights.

With regard to the Humboldt County prosecution, there were several facts and circumstances that question the legality of the proceedings. First, the charging documents alleged that the complainant was 14 years of age, when it is clear that she was 15 years old. The fact was similarly asserted at the time of his guilty plea, and later, the judge who sentenced Rendon Gutierrez mentioned several times in his sentencing decision that the

---

[11] His needed for a Spanish interpreter is reinforced by a notation in his California Department of Corrections (CDC) file that staff concluded that "yes" he needed an interpreter if there was additional proceedings regarding him. At the parole revocation hearing in October 2006, CDC provided a Spanish interpreter for him.

complainant was 14, which was incorrect. In the plea colloquy, the court made erroneous statements regarding the scope of Rendon Gutierrez' registration requirements as a convicted sex offender and regarding the use of his guilty plea to violate his probation in the Siskiyou County matter. Erroneous information about sentencing consequences, whether the information suggests the outcome will be less severe or more severe than the law in fact permits, undermines the legality of the plea. See <u>United States v. Forrester</u>, 512 F.3d 500 (9th Cir. 2008); <u>United States v. Erskine</u> (9th Cir. 2004) 355 F.3d 1161.

In sum, setting aside questions as to the legality of the guilty pleas entered by Rendon Gutierrez, it appears that the accusations – as Norman Coates, his former employer, wrote – were exaggerated, yet he paid a heavy price for his conduct. Calculating his criminal history by adding-up the points for each prior results in a Criminal History Category that over-states his prior criminal conduct, and thus the resulting Guideline calculation results in an unwarranted Guideline range. If even one of the two felony prior convictions were found unconstitutional, the Guideline range would be 46 to 57 months.

## VIII.  FINDING THE APPROPRIATE SENTENCE

Counsel believes that there are many mitigating factors here, all of which can be considered by this Court under 18 U.S.C. § 3553. These circumstances warrant a sentence well below the USSG Guideline range. These circumstances and factors are in addition to the issues detailed above regarding his prior state convictions.

First, Fernando Rendon Gutierrez is quite different than many prosecuted for illegal re-entry:

1) The United States awarded Fernando a green card (Permanent Residence Status). He came here to work and worked for years and years lawfully until an incident in Humboldt County led him to prison and then to deportation. He was not just a thug who got caught.

2) Unlike many prosecuted under section 1326, he has not been deported and deported and deported, and finally prosecuted. He was removed once and now, on his first re-entry, is being prosecuted.

3) While Rendon Gutierrez was on parole from his 2000 conviction, he was not arrested, prosecuted and convicted for a new crime separate and apart from the pending illegal re-entry case.

Second, he has continued to have meaningful, supportive contact with his child, Angelica. He plainly cares about her and her mother (and they for him, as even this small sample of the cards and letters from Angelica demonstrate), and is doing what he can to support them (even as she is about to marry another man, by whom she has a second child. He was not and is not a predator. His conduct was wrong but more culpability should not be read into the conduct than there is – and he has paid a very substantial price for his actions: prison and removal from this country, including from contact with his daughter.

It also appears that Fernando used alcohol to excess prior to his prosecutions in Northern California. There are multiple references to alcohol use in his records, Dr. Vanoni's report and the probation reports, and he was prosecuted for drunk driving in the same period. Alcohol played a role in the Humboldt County incident and may have

1    adversely affected his judgment.  Other than that incident, people describe him as a

2    courteous, gentle man, who was hardworking and responsible.

3
4          Finally, there is an arbitrary quality to the illegal re-entry Guidelines in section

5    2L1.2.  The base offense level is 8.  However, if the defendant has suffered certain kinds of

6    felony convictions (such as any drug trafficking crime with a sentence of more than 13

7    months or statutory rape) as defined in that section, the defendant's offense level is *tripled*.

8
9    The crime of illegal re-entry – the status of being in the United States without permission

10   of the Attorney General – is not more disruptive on the community or threatening to the

11   community merely by the fact that one is in the country illegally.

12          Tripling the offense level seems arbitrary and without compelling reason.  There is

13   no evidence to show that each of the categories of prior crimes differentiated in USSG §

14
15   2L1.2 in fact is related to the offender's worthiness of punishment – that an illegal re-

16   entrant with 3 prior misdemeanor drug trafficking convictions (§ 2L1.2(b)(1)(E)) which

17   increases the offense level by 4 levels is one-quarter as dangerous as a defendant who sold

18
19   a small quantity of cocaine or had consensual relations constituting statutory rape with a

20   minor in violation of California Penal Code § 261.5 (§2L1.2(b)(1)(A), increasing offense

21
22   level by 16 levels).  The lack of empirical evidence to support the distinctions drawn in §

23   2L1.2 is similar to the lack of empirical evidence to support crack cocaine guidelines

24   decried by the Supreme Court in <u>Kimbrough v. United States</u>, __U.S. __, 128 S.CT. 558,

25
26   567 (2007), and is similarly less useful as a "guide" in sentencing.

27          In sum, this Court has ample information to sentence Fernando Rendon Gutierrez

28   for his offense of conviction; further delay is neither necessary nor warranted.  Both the

Defendant's Motion for Summary Sentencing and Sentencing Memorandum

18

government and the defendant agree the Guideline sentencing range in this case exceeds what is needed and warranted in this case. His placement in Criminal History IV overstates his prior criminal record. Further, this Memorandum details many mitigating factors that this Court can and should consider under section 3553(a) in sentencing him. Fernando Rendon Gutierrez asks this Court to sentence him forthwith.

Dated: July 8, 2008

Respectfully submitted,

Scott A. Sugarman
Attorney for Fernando Rendon Gutierrez

Defendant's Motion for Summary Sentencing and Sentencing Memorandum

19